BEFORE THE SECOND DIVISION, DECEMBER 10, 1953

**No. 57675.**—Addicalco Corporation of America *v.* United States, protest 196661–K (New York).

LAWRENCE, Judge:   So-called "Addicalco" calculating machines were classified by the collector of customs as "other machines nspf" and duty was assessed thereon at 13¾ per centum ad valorem as provided in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739.

Plaintiff claims that the devices should be classified as calculating machines specially constructed for multiplying and dividing as provided in said paragraph 372, as modified, *supra*, supplemented by Presidential proclamation, id. 265, T. D. 52763, and dutiable at the rate of 12½ per centum ad valorem.

A red-ink notation on a "Memorandum to Accompany Invoice," attached to the entry papers, reads as follows:

Importer visited this office and various points were taken for review. This office is now of the opinion these machines should have been advisorily classified as "other calculators" under Par. 372 at 15%.

Original return in error.

The above notation was approved by an assistant United States appraiser.

A memorandum (undated), signed by the collector of customs and attached to the protest, contains the following statement:

Note: It is now the opinion of this office that the merchandise is properly dutiable within the exception to par 372 TA 30 as "Other calculating machines" at 15% par 372 TA 30 and TD 52739.

Defendant in its brief recites that "The merchandise is, however, properly classifiable under said paragraph 372, as modified by said [*sic*] T. D. 51802, as machines not specially provided for, 'other' and dutiable at 15%."

In furtherance of this statement, the brief points out that—

* * * This rate evolves by virtue of T. D. 51802 which provided for machines not specially provided for at 15% ad valorem, and T. D. 52739, which also has a provision for machines not specially provided for but includes a provision for "calculating machines specially constructed for multiplying and dividing," and lowered the rate to 12½ per centum ad valorem. However, the "other" provision of T. D. 52739, which provided for duty at 13¾% ad valorem, specifically excludes calculating machines. Therefore, the rate of 15% ad valorem provided for machines, not specially provided for, "other", under T. D. 51802, remains controlling and the duty of 15% is the proper rate.

Obviously, therefore, the Government concedes that the classification by the collector and the assessment of duty at 13¾ per centum ad valorem were in error.

The various provisions above referred to are here set forth.

Paragraph 372, as modified and supplemented, *supra*:

Machines, finished or unfinished, not specially provided for:
Calculating machines specially constructed for multiplying
and dividing_____ 12½% ad val.

\* \* \* \* \* \* \*

Other (except the following: accounting machines; bakery machines; calculating machines; combination candy cutting and wrapping machines; combination cases and sharpening mechanisms for safety razors; cordage machines; food cutting or grinding machines; hydraulic impulse wheels and hydraulic reaction turbines; industrial cigarette-making machines; internal-combustion engines of the noncarburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for manufacturing chocolate or confectionery; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; and tobacco cutting machines)_____ 13¾% ad val.

Paragraph 372, as modified by the General Agreement on Tariffs and Trade, *supra*:

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other (except wrapping and packaging machines; food grinding or cutting machines; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for making paper pulp or paper; machines for manufacturing chocolate or confectionery; and internal-combustion engines)_____ 15% ad val.

At the trial of this case, three witnesses were called. Max Spiegelstein, president of the plaintiff corporation, testified in its behalf. Edson I. Small, who described himself as an expert in the sales promotion department of the Monroe Calculating Machine Co., and Carl A. Zeller, New York manager for Comptometer Felt & Tarrant Machine Co., Chicago, testified on behalf of the defendant.

Spiegelstein testified that his corporation was the sole distributor in the United States and Canada for the imported Addicalco machines; that he had been dealing with them for about 2½ years but had been familiar with them for approximately 30 years, during which period they had not been improved basically; that "Addicalco" is an Italian word which means "adds and calculates." Furthermore, he testified that the machines had been made in Italy by "ACCA," an Italian concern, for 18 years, and that, prior to that time, they were made by the Comptometer Co. in Chicago, the witness stating that the American- and foreign-made machines are "About the same." A sample of the machine was received in

evidence as exhibit 1, which was subsequently withdrawn, and a photograph of it was filed with the court and marked exhibit 1.

It is not disputed that the subject merchandise consists of calculating machines which are operated manually and that they can be used to add, multiply, divide, or subtract. The witness testified that the Addicalco was not too popular in the United States because of the shortage of skilled operators; that it takes about 480 hours of constant practice to learn to operate it proficiently.

Small testified that he had been with the Monroe Co. since 1947, engaged in demonstrating the use of his corporation's office equipment and with working problems; that he had taken a training course in the basic mechanical operation of Monroe machines and was in charge of the sales and promotion of calculating machines for Monroe. This witness produced a hand-operated Monroe calculator which was received in evidence as exhibit A. By permission of the court, the exhibit was withdrawn, and a photograph of it marked exhibit B was filed with the court. Small's testimony was devoted mainly to demonstrating the modes of operation of the imported machine and comparing it with the functioning of the Monroe calculator, which operates primarily mechanically, and which latter machine defendant contends is specially constructed for multiplying and dividing, although it can also be used for adding and subtracting.

Zeller testified that he had been with the Comptometer Co. for 33 years; that he is familiar with the mechanical construction of machines such as exhibits 1 and A.

The testimony of Zeller, like that of the witness Small, was devoted primarily to demonstrating the relative merits of the Monroe calculator in comparison to that of the Addicalco. It was the opinion of Zeller that the Monroe calculator was specially constructed for multiplying and dividing because it is a rotary machine, which he described as follows:

A rotary machine is a machine where you turn the crank and press a bar to do its proper functioning. In the inside of this is a mechanism here that you look at. You can see it is so constructed, that when you turn the crank it fits into its proper place.

He pointed out that while the Addicalco has a keyboard, it does not have a moveable carriage, explaining that a carriage is used to change from a unit of tens to hundreds or thousands.

Zeller also testified that there are calculating machines which multiply and divide but do not add or subtract. He identified these as the "millionaire," and "Mercedes," machines, adding "There are very few in this country."

We shall consider first the question presented by plaintiff, whether the importation consists of "Calculating machines specially constructed for multiplying and dividing" and dutiable at 12½ per centum ad valorem as provided in said paragraph 372, as modified by the Torquay Protocol, as supplemented, *supra.*

It will be observed that said paragraph, as modified and supplemented, *supra,* provides specifically for "Calculating machines specially constructed for multiplying and dividing" and that in the provision for "Other" machines in the same paragraph, as modified, "calculating machines" are specifically excepted. Obviously, the words "calculating machines" would include not only such machines when specially constructed for multiplying and dividing, but as well similar machines which, in addition to multiplying and dividing, can also be used for adding and subtracting.

The language employed by the negotiators of the Torquay Protocol in segregating calculating machines which are specially constructed for multiplying and dividing and according them a lower rate of duty than that imposed upon other calculating machines bears some indication that the negotiators intended that the rate of 12½ per centum ad valorem should be limited to those machines which

were specially constructed for multiplying and dividing only. However, defendant in its brief invites our attention to the Digest of Trade Data at page 133, with respect to certain products on which concessions were granted by the United States in the Swedish Trade Agreement, 68 Treas. Dec. 19, T. D. 47785, reading as follows:

*Paragraphs 353 and 372*

*Description and uses*
The calculated [*sic*] machines affected by reclassification are confined to those constructed essentially for multiplying and dividing. *Such machines can be used to add or subtract, although these operations are usually more readily performed on adding machines.*

\*    \*    \*    \*    \*    \*    \*

*Adding machines are not included* under the new classifications for the reason that *although many of them are capable of being used for multiplying and dividing,* they are not constructed essentially for the performance of these operations.

Hand operated calculating machines are dutiable under paragraph 372; those equipped to be operated by an electric motor are dutiable under paragraph 353. [Italics supplied.]

Reference is also made to The New International Encyclopaedia, volume 4, second edition, at page 307, containing the following information:

Modern calculating machines may be divided into two large classes, (1) adding machines and (2) multiplying and dividing machines. These terms are somewhat misleading, since an adding machine will subtract, multiply, and divide, but it cannot perform these additional operations with great speed; *the multiplying and dividing machine will also add and subtract,* but so slowly that it will never be used commercially for such work. Hence the classification refers to the operation for which the machine is best suited and primarily constructed.

*A typical modern adding machine is the comptometer.* Numbers are added on this machine by depressing keys on the top similar to those of the typewriter. The keys in the column on the extreme right represent units; those in the next column to the left, tens; those in the column next to that, hundreds; and so forth. $3.57 is recorded by depressing 3 in the hundreds column, 5 in the tens column, and 7 in the units column. To add $1.25 to this, proceed in a similar manner, the sum automatically appearing on the dials at the front of the machine. This process can be continued with any number of items, the sum always appearing immediately at the front. [Italics supplied.]

And, at page 308, the following appears:

**Multiplying and Dividing Machines** may be separated into two classes, depending upon the principle by which the mechanism obtains results, i. e., whether the product is obtained as the result of repeated additions or as a direct multiplication. Machines of the first group will be considered first. Leibnitz conceived this type of machine in 1671 \* \* \*. The essential part of the mechanism of this machine is a drum with nine teeth of unequal length, which was invented by Leibnitz. To multiply 267 by 4 on such a machine, the operator sets the number 267 by sliding three knobs to their proper position; he then turns a small handle four times, and the product immediately appears on a special set of dials. Each turning of the handle adds the number to itself, thus performing continued addition. To multiply 267 by 54, the operator begins as described above to multiply by 4, *then the carriage of the machine is shifted one space and the handle is turned five times, after which the product appears on the special set of dials.* The distinct advantage of this type of machine lies in the fact that, besides the product, both of the factors can be left on the machine as a check upon the work. This type of machine is sometimes known as the Thomas Arithmometer. \* \* \*

The machines just described can perform multiplication only by repeated addition, and division only by repeated subtraction. We should do the same thing with pencil if it were not for the fact that we have learned the multiplication table. \* \* \* [Italics supplied.]

See also the Encyclopaedia Britannica, volume 4, fourteenth edition (1952), pages 550–552.

Although the sources of information to which reference has been made would indicate that machines which are essentially contrived to multiply and divide may also be used to add and subtract, we, nevertheless, have the uncontradicted testimony of Zeller in which it is stated that the two calculating machines known as the "millionaire" and the "Mercedes" multiply and divide only.

While it is conceded that the Addicalco is a calculating machine which "takes in the four operations, adds, multiplies, divides, and subtracts," we are not advised whether it was "constructed essentially for the performance" of any one or more of those operations to the exclusion of others.

Without attempting in this case to determine whether the provision for "Calculating machines specially constructed for multiplying and dividing" is confined to calculating machines which perform those functions solely, we are clearly of the opinion upon the record before us that the subject machines in this case are not within that category. The claim of plaintiff, therefore, cannot be sustained. However, since it is conceded that the classification and assessment with duty by the collector of customs were in error, we are constrained to affirm without approving his decision.

Judgment will be entered accordingly.